The appellant, Levanure Zimmerman, appeals from the circuit court's denial of his postconviction petition, in which he contested the legality of his 1991 sentence. He first filed this petition, which he styled as a "petition for writ of habeas corpus," in another circuit court, but that court correctly construed it as a postconviction petition under Rule 32, Ala.R.Crim.P., and transferred it to the Calhoun Circuit Court, the court of Zimmerman's conviction. Zimmerman's contention that the circuit court erred in treating his petition as a Rule 32 petition is without merit.See Rule 32.4; and, e.g., Miller v. State, 766 So.2d 990 (Ala.Crim.App. 2000).
On appeal, Zimmerman argues the merits of the issue he presented in his petition: whether his 1991 sentence, as an habitual felony offender, of life imprisonment without the possibility of parole violates his right to equal protection by virtue of an amendment to § 13A-5-9(c)(3), Ala. Code 1975, effective May 25, 2000, which, in pertinent part, gives the trial court discretion to sentence a Class A felony offender with three prior felony convictions to imprisonment for life or to imprisonment for life without the possibility of parole if none of the offender's three prior felony convictions was for a Class A felony. See
Act. No. 2000-759, Ala. Acts 2000. When Zimmerman committed the offense for which he was punished as an habitual offender, the mandatory sentence under § 13A-5-9(c)(3) for a Class A offender with three prior felony convictions was imprisonment for life without parole even though those prior convictions were for non-Class A felonies. His prior convictions were not for Class A felonies. The Alabama Legislature specifically provided, in Section 3 of Act No. 2000-759, that that amendment was to be applied prospectively, only to those cases in which the sentence was not final in the trial court on May 25, 2000, the effective date of the Act. Section 3 further provided that the Act "shall not be construed to create a right of any person currently serving a term of imprisonment imposed pursuant to Section 13A-5-9 . . ., prior to the effective date of this amendatory act, to petition the parole board or court for review of his or her sentence based on Section 13A-5-9 . . ., as amended."[1]
Zimmerman contends that such *Page 406 
prospective application violates his equal-protection right. He argues that the amendatory act results in a date-based classification, conferring the possibility of more lenient sentencing on the class of persons whose sentences were not final as of May 25, 2000, the effective date of the Act, while excluding from that leniency those whose sentences, although imposed on convictions for offenses of the same nature or seriousness, were final before the effective date of the Act.
Under the well-recognized rule, Zimmerman's argument has no merit. "[A] reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection." 16B C.J.S.Constitutional Law § 777 (1985). See also Arthur W. Campbell, Law ofSentencing § 8:6 (2d ed. 1991) ("It has been ruled equal-protection principles [do not] require retroactive application of a newly enacted statute which would lessen sentencing sanctions. . . ."). See, e.g.,Mirenda v. Ulibarri, 351 F. Supp. 676 (C.D.Cal. 1972); In re Moreno,58 Cal.App.3d 740, 743, 130 Cal.Rptr. 78, 80 (1976) ("Equal protection is not denied where an amendatory statute reducing a penalty is not applied to persons whose convictions were final before the effective date of the ameliorative amendment."); Carter v. State, 512 N.E.2d 158, 170 (Ind. 1987) ("Because Carter was charged, tried, and sentenced before the amendment went into effect, it was not a denial of equal protection to sentence Carter according to the statute in effect at that time."); Bowenv. Recorder's Court Judge, 384 Mich. 55, 179 N.W.2d 377 (1970); Burch v.Tennessee Dep't of Correction, 994 S.W.2d 137 (Tenn.Ct.App. 1999). Where legislation confers a benefit not previously provided and is effective on a certain date, the apparent inequity results from all such ameliorative legislation and has been held not to deny equal protection. Jackson v.Alabama, 530 F.2d 1231, 1238 (5th Cir. 1976). See also Brooks v. State,622 So.2d 447, 449 (Ala.Crim.App. 1993) ("A prisoner sentenced under an earlier, less favorable sentence reduction statute generally has no right to complain of the ameliorative provisions of a later good-time statute.").
In presenting his argument to the circuit court and to this court, Zimmerman repeatedly relies on the following language:
 "Generally, any law with respect to the punishment to be given must operate equally on every citizen or inhabitant of the state, and a statute is void as a denial of equal protection of the laws which prescribes a different punishment or different degrees of punishment for the same acts committed under the same circumstances by persons in like situations."
Opinion of the Justices No. 293, 410 So.2d 60, 61 (Ala. 1982). However, the amendatory act, by mandating that its benefits apply only to those whose sentences were not final on May 25, 2000, created two classes, thereby negating any possibility of its subjects being "persons in like situations." As noted by the court in Mirenda v. Ulibarri,351 F. Supp. at 677: *Page 407 
 "This is of necessity the result of any new law which is to go into effect at and on a certain date. The seeming inequity in fixing a cut-off date is outbalanced by the factors of reliance and burden on the administration of justice which argue for prospective application only. Stovall v. Denno, 388 U.S. 293, 300-301 . . . (1967)."
See also Jackson v. Alabama, 530 F.2d at 1238 ("the `factors of reliance and burden on the administration of justice,' Stovall v. Denno[,388 U.S. 293, 300 (1967)], outweigh the apparent inequity in determining a fixed cutoff date"); In re Moreno, 58 Cal.App.3d at 743, 130 Cal.Rptr. at 81 (the Legislature properly may give only prospective operation to statutes that lessen the punishment for a particular offense, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment); People v. Grant, 71 Ill.2d 551,562, 377 N.E.2d 4, 9 (1978) (avoiding remand for additional sentencing hearings is a reasonable basis for the Legislature's distinguishing between those defendants who had not yet been sentenced prior to the effective date of the amendatory act and those, on the other hand, whose sentences had been imposed before the effective date); Burch v. TennesseeDep't of Correction, 994 S.W.2d at 139 (the preservation of the deterrent effect that arises from allowing sentences that have already been imposed to remain unchanged is a legitimate state interest); State ex rel.Stewart v. McWherter, 857 S.W.2d 875, 877 (Tenn.Crim.App. 1992) (a compelling state interest exists in preserving the finality of criminal litigation resulting in a conviction and sentence which were valid at the time of their imposition). Accordingly, we reject Zimmerman's argument that there is no possible rational relationship between classification based upon the date the sentence became final and any legitimate state interest.
Some courts have resolved the issue of the effect of an amendatory act by statutory construction. See Campbell, supra at § 8:22. For example, in Abdo v. Commonwealth, 218 Va. 473, 479-80, 237 S.E.2d 900,903-04 (1977), the court treated the issue as follows:
 "When the General Assembly reduced the penalty for the offense of manufacturing phencyclidine it did not enact accompanying legislation extending the benefit of the mitigating effect of the statute beyond that provided for in Code § 1-16.[2] We see no constitutional question involved in this case. The fact that the legislature reduces the penalty for a crime after a prisoner is sentenced, and he does not benefit from that mitigation of punishment, does not constitute an arbitrary classification or deny the prisoner equal protection of the law. Here the legislature, in the exercise of its reasonable legislative determination, has seen fit to draw the line of demarcation at the point where final judgment is pronounced and entered. It cannot be said that to draw it at this point is more arbitrary than at some other stage in the criminal process. Bradley v. United States, 410 U.S. 605 . . . (1973)."
Based on the foregoing, we find no violation of equal protection in the prospective application of the amendment to § 13A-5-9. The circuit court properly found Zimmerman's petition to be without merit. *Page 408 
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] We note the general law, as expressed by the following:
 "As a general rule, a criminal offender must be sentenced pursuant to the statute in effect at the time of the commission of the offense, at least in the absence of an expression of intent by the legislature to make the new statute applicable to previously committed crimes. An increase in the penalty for previously committed crimes violates the prohibition against ex post facto legislation.
 "A legislature may, however, prospectively reduce the maximum penalty for a crime even though those sentenced to the maximum penalty before the effective date of the act would serve a longer term of imprisonment than one sentenced to the maximum term thereunder. Where a statute reduces the punishment which may be imposed for a crime committed before the statute is enacted but for which sentence is imposed after the statutory amelioration, the ameliorative statute ordinarily vests the court with the discretionary power to impose the lesser punishment provided by the new law."
24 C.J.S. Criminal Law § 1462 (1989) (footnotes omitted).
[2] Code § 1-16 stated, in pertinent part, "[I]f any penalty, forfeiture, or punishment be mitigated by any provision of the new law, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."