**In the Interest of C.P., Minor Child, Appellant.**

No. 97–437.

Supreme Court of Iowa.

Oct. 22, 1997.

Timothy D. Ament of Gartelos, Wagner & Ament, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, Thomas J. Ferguson, County Attorney, and Jack Lammers, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This is an appeal from a delinquency dispositional order that included an order suspending C.P.'s driving privileges for five months. C.P. contends his license was suspended without due process of law and that Iowa Code section 232.52(2)(a)(5) (1997) violates the state and federal equal protection clauses. We disagree and affirm the juvenile court's orders.

## I. Background Facts and Proceedings.

C.P., a sixteen-year-old male, was charged with twenty-one counts of delinquency. The charges arose from a series of acts committed over a five-month period. C.P. placed unwanted orders for goods and services for delivery to the family of a classmate. The acts included ordering: pizza, a taxicab, a locksmith to change the locks on the classmate's home, garbage disposal service for the home, and a tow truck. The child made over 100 telephone calls to the family residence inquiring about services he ordered. He also used a credit card number without authority to purchase a phone calling card.

On December 11, 1996, a hearing on the delinquency charges was held. C.P., his attorney, and his father were present. The court was advised a plea agreement had been reached between the juvenile and the county attorney's office. As part of the plea agreement, C.P. admitted guilt to nine counts of harassment in the third degree in violation of Iowa Code section 708.7, a simple misdemeanor, and one count of credit card fraud in violation of Iowa Code section 715A.6, an aggravated misdemeanor. The court determined there was a factual basis for the plea and accepted the plea and found the juvenile guilty of delinquent acts. The court was advised that no recommended disposition had been agreed to as part of the plea agreement. The court placed C.P. on temporary probation and ordered that he submit to outpatient psychological evaluation. The court directed the juvenile court services to conduct a predisposition investigation and report its findings and recommendations prior to the time of the dispositional hearing. The report was prepared and available at the dispositional hearing.

On February 12, 1997, a dispositional hearing was held. The court ordered the care, custody, and control of C.P. remain with his parents under the supervision of the department of juvenile court services pursuant to terms and conditions approved by the court in a separate document. The court also ordered that C.P.'s privilege to drive an automobile be suspended for five months with the provision that he could be issued a work permit or a school license if he was otherwise eligible. C.P. appealed the dispositional order that suspended his driving privileges.

On appeal, C.P. claims the suspension of his driver's license was done without due process because there had been no prior mention by the court of the possibility of license suspension. He urges the delinquent acts did not involve his operation of a motor vehicle. He also claims the suspension violated the equal protection clause of both the federal and state constitutions.

## II. Scope of Review.

 Our scope of review in appeals from delinquency cases is de novo. *In re G.J.A.,* 547 N.W.2d 3, 5 (Iowa 1996). We review both questions of law and fact. Iowa Code § 232.133(1). Typically, we deem the federal and state due process and equal protection clauses to be identical in scope, import, and purpose. *Exira Community Sch. Dist. v.*

*State,* 512 N.W.2d 787, 792–93 (Iowa 1994). We do so in this matter.

### III. *Due Process.*

The Due Process Clause of the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Constitution contains similar language stating "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9.

■ There is no question that the suspension of a driver's license implicates a protected property interest. *Mackey v. Montrym,* 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321, 329 (1979). It is equally clear that the Due Process Clause applies to suspension or revocation of a driver's license. *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172, 179–80 (1977). The requirements of the Due Process Clause are flexible and therefore, the type of hearing required varies based on "(a) the private interests implicated; (b) the risk of an erroneous determination by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedures would involve." *In re Marriage of Seyler,* 559 N.W.2d 7, 9 (Iowa 1997) (quoting *United States v. Raddatz,* 447 U.S. 667, 677, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424, 436 (1980)).

■ C.P. urges he was denied his procedural due process safeguards. He claims he was entitled to a separate hearing on the license suspension issue before the court suspended his license. We disagree. C.P. was afforded ample opportunity to be heard on the suspension issue. C.P. was represented by counsel at all stages of his delinquency adjudication. He was entitled to an adjudicatory hearing at which the State had the burden of proving the allegations against him. Iowa Code § 232.47. C.P. appeared and waived his right to the adjudicatory hearing by his guilty plea to nine counts of delinquency. The court set a date for a dispositional hearing and a hearing was held. *Id.* § 232.52.

C.P., his attorney, and his father were present at the dispositional hearing and each was permitted to make statements and was questioned by the juvenile judge. The court inquired as to C.P.'s use of his father's car. The judge told C.P. he considered it appropriate to suspend his license for five months, the period of time that C.P. had harassed his victims. No request was made to allow further record or argument and the hearing was closed.

C.P. claims a suspension of his driver's license was a surprise because no one had mentioned the possibility of such an order. However, he knowingly and voluntarily entered into the guilty plea agreement. The juvenile court is required to enter the least restrictive dispositional order appropriate in view of the seriousness of the delinquent act, the child's culpability as indicated by the circumstances of the particular case, the age of the child, and the child's prior record. *Id.* § 232.52(1). The dispositional orders that a court may enter under the statute include "the suspension of the motor vehicle license or operating privilege of the child for a period not to exceed one year. The order shall state whether a work permit may or shall not be issued to the child." *Id.* § 232.52(2)(a)(5). The dispositional hearing gave C.P. an opportunity to resist the suspension of his motor vehicle license. It would impose unnecessary burdens, both financial and administrative, on the court system to require a separate hearing on the suspension issue. We find no merit in C.P.'s contention that he was denied due process. In short, C.P. had all the process which he was due.

### IV. *Equal Protection.*

■ C.P. next raises an equal protection claim. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 6. He argues Iowa Code section 232.52(2)(a)(5) violates the equal protection clause of the federal and state constitutions because the section divides juvenile offenders into two groups, those with driver's licenses and those without, and treats each group differently. Since no fundamental right or suspect classification is implicated by

C.P.'s claim, we analyze the equal protection issue using the rational basis test. *Exira Community Sch. Dist.*, 512 N.W.2d at 792–93.

 Under the rational basis test constitutional protections are offended only if the classification is based on arbitrary grounds that are not related to the achievement of a legitimate state interest. *Baker v. City of Ottumwa*, 560 N.W.2d 578, 582 (Iowa 1997). When reviewing a statute for constitutionality, we presume the statute is constitutional and the party asserting otherwise carries a heavy burden to so prove. *Bruns v. State*, 503 N.W.2d 607, 609 (Iowa 1993). "The individual asserting a violation of equal protection rights carries the burden of showing the classification 'clearly, palpably and without doubt infringes on the constitution; and every reasonable doubt will be resolved in favor of constitutionality.' " *McMahon v. Iowa Dep't of Transp.*, 522 N.W.2d 51, 56–57 (Iowa 1994) (quoting *Avery v. Peterson*, 243 N.W.2d 630, 633 (Iowa 1976)).

 In this case, the State interest implicated is preventing future delinquent behavior by juvenile offenders. Suspension of a juvenile's driving privileges is rationally related to that interest. Just as a parent might not allow a child to watch television or to drive the family car as a consequence of misbehavior, so also may the State suspend the driving privileges of a delinquent juvenile. The action is taken to underscore the seriousness of the behavior and to impose a burden on the juvenile, prompting the offender to think about the consequences of his or her actions. We find no violation of either the state or federal equal protection clauses.

**AFFIRMED.**